## GORDON v. HAZZARD.

1. Two bonds maturing at different dates were secured by one mortgage. The mortgagee first assigned to one person the bond last maturing, and then to another person the bond which first matured. Between these assignees (there being no express stipulation upon the subject), there are no priorities, but they are entitled to share *pro rata* in the proceeds of the sale of the mortgaged land, if insufficient to pay both bonds in full.
2. A matter of credit on one of these bonds not having been passed upon in the Circuit decree, left open for future inquiry.
   MR. JUSTICE MCIVER, *dissenting.*

Before WALLACE, J., Georgetown, May, 1889.

Action by May D. Gordon against William M. Hazzard *et al.,* commenced in May, 1888. The opinion states the case, but it may be added that on December 23, 1887, W. M. Hazzard sent to P. C. Trenholm $336.24 to be credited on Mrs. Gordon's note and also on the bond and mortgage held by her as collateral. Mr. Trenholm replied that the payment had been credited on the note, "but Mrs. Gordon is not authorized to credit it on the bond, but I think the form of receipt I sent you fully protects you." This receipt is not printed in the Brief. The referee allowed this credit on the note, but makes no allusion to the claim that this amount should also be credited on the bond, but in his statement of the amount due thereon. he ignores this credit. The Circuit decree confirmed the referee's report. It should also be stated that Mrs. Fannie Trenholm joined with plaintiff in her exceptions and appeal.

*Mr. Richard Dozier,* for plaintiff and Mrs. Fannie Trenholm, contended that the bond first assigned was entitled to priority of payment, and *cited* 2 Pom. Eq. Jur., §§ 734, 678–683, 703 ; 1 *Ibid.,* § 414 ; 3 Ibid., §§ 185, 1201 ; 42 *N. Y..* 334 ; 4 *DeG., F. & J.,* 208 ; 1 *McCord Ch.,* 43 ; 4 *Rich. Eq.,* 105 ; 1 *Id.,* 41 ; 2 Jones Mort., § 1701 ; 4 *Ala.,* 452 ; 15 *Ala.,* 501 ; 27 *Grat.,* 385 ; 1 *Rand.,* 466 ; 9 *Ala.,* 645 ; 13 *Rich. Eq.,* 221 ; 3 *S. C.,* 25 ; 14 *Id.,* 93 ; 5 *Johns. Ch.,* 235. It was also con-

tended, that the points really decided in the cases relied upon
by opposing counsel (5 *S. C.*, 342 ; 11 *Id.*, 539 ; and 14 *Id.*,
66), did not support the position contended for by defendants.

*Messrs. R. G. Rhett* and *Inglesby & Miller*, contended in be-
half of Mrs. Macbeth and McCollough, guardian, that priority
attached to the bond which first matured, and cited in support of
this position : 1 *Pars. Cont.*, 229 ; 1 *Dan. Neg. Inst.*, 725 ;
*Jones Mort.*, §§ 1699–1701 ; 3 *Pom. Eq. Jur.*, pp. 184, 185,
§ 1201.

March 21, 1890.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.  The pleadings are not in the "Case,"
but we suppose the facts from the report of the referee, T. M.
Gilliland, Esq., may be stated with sufficient fulness to make the
points intelligible.   On June 1, 1879, William M. Hazzard,
administrator of the estate of A. G. Trenholm, executed to G. A.
Trenholm & Son (William L. and P. C. Trenholm) two separate
bonds, dated June 1, 1879, and conditioned—one for the pay-
ment of $9,000, on or before June 1, 1882, with the interest an-
nually ; and the other for a like sum on or before June 1, 1883,
with the interest annually—and to secure these bonds executed
a mortgage of even date therewith, covering the premises de-
scribed in the complaint (which we assume was regularly record-
ed).   On April 4, 1881, G. A. Trenholm & Son made a promis-
sory note to Mrs. May D. Gordon for $4,803.45, payable one
year after date, and assigned to her, as collateral security for its
payment, the bond of Hazzard last maturing, viz., that due
June 1, 1883.   On April 12, 1881, Mrs. Fannie A. Tren-
holm loaned George A. Trenholm & Son $1,700, and it was then
agreed that the bond of Hazzard, payable in 1883, should stand
as a security for the payment of that loan, after the payment of
plaintiff's note.

On February 29, 1884, G. A. Trenholm & Son executed to
Mrs. M. V. Macbeth their promissory note for $1,514.43, pay-
able 12 months after date, with interest every 6 months ; and on
March 26, 1884, they executed to Mrs. A. H. Trenholm their
promissory note for $1,950, payable 12 months after date, with

interest every 6 months. This note is now held by D. H. Mc-Collough, guardian. As collateral security for the payment of these two notes, G. A. Trenholm & Son assigned the bond of Hazzard, administrator, first maturing, to wit, the bond payable in 1882, upon which bond all payments made by Hazzard had been credited. The note to Mrs. Macbeth recites the note to Mrs. Trenholm, and *vice versa ;* and each of these notes declares the assignment of the bond payable in 1882 as collateral security for the payment of itself and the other.

On the bond payable in 1882, there was due on June 1, 1884, the sum of $3,815.36, and there is now due on it $3,815.-36, with interest from June 1, 1884. On the bond payable in 1883, there was due on June 1, 1884, the sum of $9,000, and the referee finds that this sum is now due, with interest; but it is alleged that Hazzard, on December 23, 1887, paid to Paul C. Trenholm, as agent for the plaintiff, $336.24, to be credited on the bond held by her; and it is claimed that said sum should be credited on the bond held by plaintiff.

Plaintiff now brings this suit to foreclose the mortgage, and contends that, by reason of its earlier assignment, the bond payable in 1883, and securing her note, is entitled to priority of payment out of the mortgaged property. The defendants, Mrs. M. V. Macbeth and D. H. McCollough, on the other hand, maintain that the bond payable in 1882, and securing their notes, is the first to mature, and is therefore to be first paid out of the mortgage fund. The referee did not agree either with the plaintiff or the defendants, but held, as between the assignees, there was no priority; that both bonds were parts of the debt secured by the mortgage, and the different assignees were entitled to prorate the mortgage fund between them, according to their respective proportions. Both parties excepted, and, after hearing argument upon the exceptions, Judge Wallace, by short order, confirmed the report, and ordered it to stand as the judgment of the court, giving leave to apply at the foot of the decree for such orders as may be necessary to carry it into effect. From this decree both parties again appeal.

PLAINTIFF'S EXCEPTIONS.—"(1) The referee, upon the facts found by him, erred in holding, as matter of law, that the bond

23—32

assigned to the plaintiff should be paid *pro rata* with that assigned to Mrs. Macbeth and Mrs. A. H. Trenholm out of the proceeds of the mortgaged property. (2) Upon the facts found, the referee should have held, as matter of law applicable thereto, that the land assigned to the plaintiff, having been assigned to her more than three years before the assignment of the other bond to Mrs. Macbeth and Mrs. Trenholm, was entitled to priority of payment out of the proceeds of the mortgaged premises. (3) That where two bonds secured by one mortgage, given by the same person at the same time, are transferred to different persons for value, at different times, the first assignee is entitled to priority of payment out of the proceeds arising from the sale of the mortgaged property before the latter assignee. (4) That the subsequent assignee can only get what the assignor has to give at the time, and, as between the first assignee of one of the bonds and the assignor retaining the other bond, the assignee, upon foreclosure, is entitled to be first paid out of the proceeds of sale, before the assignor can come in, and the referee erred in not applying this principle of law to the facts as found by him in the case.

DEFENDANTS' EXCEPTIONS.—"(1) That his honor, Judge Wallace, erred in not holding, as matter of law, that the bond securing the notes held by these defendants, being the first to mature, is therefore entitled to payment in full out of the proceeds of the mortgaged property, before any part thereof can be applied to the bond securing the plaintiff's note. (2) That his honor also erred in confirming the referee's finding that there is due on the bond securing plaintiff's note the sum of $12,551.16, and thus failing to credit thereon the payment made by W. M. Hazzard, administrator, to P. C. Trenholm, on account of the interest on said bond, &c.

The question raised here is certainly a very interesting one, and, from the fact that the parties interested take such entirely opposite views of their rights, we should infer that the precise question had never been clearly settled in this State. If we could take time from other 'engagements, it might be profitable to go fully into the subject, but, under the circumstances, that is impossible. In reference to the subject of the rights of assignees

of parts of a debt secured by mortgage, Mr. Pomeroy says there are three distinct and different views: (1) One which gives priority to the assignment first in the order of time; (2) another, which, disregarding entirely the date of the assignment, gives priority to that part of the debt first falling due; (3) and still another, which gives none of the assignees any priority, but holds that all of them are entitled to a *pro rata* of the proceeds from the mortgaged property.

He remarks that the first—giving priority simply from the date of the assignment— is "a peculiar rule," based upon the notion that, as between the mortgagee who assigns one note and retains the other, the assignee is entitled to the preference; and, the first assignee having thus a priority as against the mortgagee, any subsequent assignee could only succeed to this position of the mortgagee, and so the assignees would all take in the order of their assignments, &c. He thinks the correct rule is, that which gives priority to the note first falling due, upon the ground that the notes falling due at different times are like successive mortgages. But he proceeds as follows: "Another rule had been adopted by the courts of several States. Upon the same condition of facts, they hold there is no preference or priority whatever among the various assignees. The terms [times] of their respective assignments, or of the maturing of their notes, are alike immaterial. All the assignees are entitled, as among themselves. to share *pro rata* in the security of the mortgage and in the proceeds of the mortgaged premises, if there is not sufficient to pay all in full," &c. See 3 Pom. Eq. Jur., § 1201, and numerous authorities in the notes from Michigan, Pennsylvania, Tennessee, Mississippi. Texas, and other States.

This latter view, as it seems to us, is the most in accordance with equity. The mortgage debt, though in two bonds, was an entirety and secured by one mortgage. If the debt, for the sake of convenience, was put in the shape of two bonds, payable at different times, it was nevertheless the mortgage debt, as much as if, instead of two bonds, there had been but one, with two instalments, payable at different times. In the absence of any express stipulation on the part of the assignor, an assignee, in taking an assignment of a particular instalment, knows precisely

what proportion of interest he is acquiring in the mortgage security. To the extent of that interest the mortgage follows and secures him, and no further. If he gets what he bargained for, he has no right to complain. One of the cardinal maxims of the court is, that "equality is equity." We think that, so far as the question has been touched in this State, the doctrine is indicated that, as between assignees of different parts of a mortgage security, there are no priorities. See *Muller* v. *Wadlington*, 5 S. C., 342; *Adger* v. *Pringle*, 11 *Id.*, 530.

As to the alleged payment of $336.24 to P. C. Trenholm, as the agent of Mrs. Gordon, the Circuit Judge made no ruling, and that, of course, is not adjudged, but is left open for further inquiry.

The judgment of this court is, that the judgment of the Circuit Court, with the exceptions stated, be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCIVER, *dissenting*. I am unable to concur in the conclusion reached by the majority of the court in this case; and if time permitted, would be glad to discuss at length the question involved. But the unusual number of cases heard at the present term leaves but little time to devote to a mere dissenting opinion. I must therefore content myself with merely indicating as briefly as practicable the grounds of dissent.

Inasmuch as there is no authoritative decision in this State of the question involved, this court is at liberty to adopt either one of the three views presented by Mr. Pomeroy in his valuable work on Equity Jurisprudence, and set forth briefly in the opinion of Mr. Justice McGowan. It seems to me that the view most in accordance with well settled principles of equity, and which therefore ought to be adopted, is that which gives priority to the assignment first in order of time. There can be no doubt that, upon the plainest principles of equity and justice as between the assignee and the mortgagee, the assignee is entitled to the preference; and as is said in 3 Pom. Eq. Jur., § 1203, it has been generally so held. Now, if this be so, if the assignee has an equity to be preferred to his assignor, the mortgagee, I do not see how he can be deprived of that equity by any subsequent act of

the mortgagee to which the assignee has in no way contributed, could not prevent, and very probably knew nothing of. If the mortgagee, after having assigned one of the bonds secured by the mortgage, holds the same subject to the prior right of his assignee, it would seem to follow that, as he could not transfer to another any higher or better right than he himself had, the second assignee must take subject to the rights of the first assignee.

This would work no injustice to the assignee, for the terms of the mortgage, of which he is presumed to have notice, would inform him that it was given to secure the payment of two separate bonds ; and, as was said in *Lynch* v. *Hancock* (14 S. C., at page 86), the very fact that two separate bonds were given, instead of one payable in two instalments, indicated that the original purpose was to make use of these bonds separately, by a transfer of them to different persons. Ordinary prudence would therefore suggest to a purchaser the inquiry, what had become of the other bond, and such inquiry would lead to the discovery of the fact that it had previously been assigned to a third person, who had thereby acquired a priority over the mortgagee ; and if, in the face of this information, the purchaser saw fit to buy the other bond which he knew was then subject to the bond previously assigned, he would have no just ground to complain, when such priority is subsequently asserted. In effect, the second assignee buys property which he knows is subject to the claim of a third person superior to that of his vendor or assignor, and such superiority follows it into his hands. Practically, though not in form, he buys or takes a lien upon property which he knows or ought to know is subject to a prior lien in the hands of his vendor or lienor, and he therefore must take subject to such prior lien ; for although it may not be correct to apply the term lien in this way, yet the principle involved is the same. and I have ventured to use that term simply as illustrative of the principle.

The view which I have adopted is in close analogy to the well settled and undisputed doctrine, that where a mortgagor sells to third persons, at different times, portions of the mortgaged premises, the first purchaser has an equity to require the mortgagee, when he comes to foreclose his mortgage, to sell the different por-

tions in the inverse order of the sales by the mortgagor. Now, this equity in the first purchaser exists not only against the mortgagor, but also against the second and all subsequent purchasers, and I do not see why, upon the same principle, the equity which the first assignee unquestionably has against the mortgagee, should not also be recognized against the second assignee or purchaser. It is true that the mortgage was designed to secure the payment of both of the bonds; but when the mortgagee parts with one of them for valuable consideration, equity will not allow him to enforce the security for the payment of the bond which he has retained, until his assignee, whose money he has received, has been paid, and a purchaser from him—the second assignee—has no higher rights than he has; for, to borrow the idea, though not the precise language, of Chan. Kent in *Clowes* v. *Dickenson* (5 Johns. Ch., 241), *he sits in the seat of his assignor.* So it is true, in the case from which the above analogy is drawn, the mortgage covers the entire land, and, if necessary, the whole of it may be sold; but by reason of the equity arising in favor of the first purchaser the moment he makes his purchase, he can require not only that the portion of the mortgaged premises retained by the mortgagor shall be first sold, but also that sold to the second purchaser, before resort can be had to that bought by the first purchaser; for, as said by Chan. Kent in the case cited, "he sits in the seat of his grantor and must take the land with all its equitable burdens."

As to the question presented by defendant's second ground of appeal, it seems to me that it has been decided by the referee, and as all of the conclusions of the referee were confirmed by the Circuit Judge, it is properly before us. But as this is a question more of fact than of law, in view of the concurring judgment of the referee and the Circuit Judge, I do not think this court should interfere.

Judgment modified.